Major R. SARGENT,
Appellant/Counter–Appellee,

v.

CENTRAL NATIONAL BANK & TRUST COMPANY OF ENID, OKLAHOMA, a national banking association, Appellee/Counter–Appellant.

No. 70796.

Supreme Court of Oklahoma.

March 5, 1991.

Rehearing Denied May 14, 1991.

Mort G. Welch, Abowitz & Welch, Oklahoma City, for appellant/counter-appellee.

Craig L. Box, Gungoll, Jackson & Collins, P.C., Enid, for appellee/counter-appellant.

OPALA, Chief Justice.

This certiorari proceeding tenders an issue of first impression—whether, and to

what extent, § 24(Fifth) of the National Bank Act (12 U.S.C. § 21 et seq.)[1] preempts the Oklahoma law upon which the plaintiff's claim is based. We answer that pre-emption does not shield the defendant-bank from *tort liability* for dismissing an employee in violation of a state public policy which is consistent with the federal statute's purpose. Actionability upon the plaintiff's *contractual* theories depends on whether under § 24(Fifth) the defense sought to be invoked is available. Because disputed fact issues regarding the federal law's applicability to *ex contractu* theories are present, and because plaintiff's *Burk*-based[2] tort theory is not subject to pre-emption, the bank's summary judgment cannot stand.

## I.

## THE ANATOMY OF LITIGATION

■ This is an action to recover for wrongful discharge from employment. The defendant (appellee) is Central National Bank & Trust Company of Enid (Bank). A former auditor of the Bank is the plaintiff (appellant), Major R. Sargent (plaintiff or Sargent). Recovery is sought based on 1) breach of contract, 2) promissory estoppel, 3) breach of implied covenant of good faith[3] and 4) tortious discharge in violation of this state's public policy. The last theory of recovery met with this court's approbation in *Burk v. K-Mart Corporation*[4] as a recognized tort-based exception to the "at-will termination rule."[5] Under Oklahoma law, an actionable tort claim arises when an employee is discharged *either* for refusing to violate, by act or omission, a well-defined public policy *or* for performing an act in compliance with a clear and compelling public policy.[6]

Plaintiff contends, among other things, he was fired for refusing to destroy or alter a report to the Bank's "audit committee." Several statutes are said to prohibit the act which his superiors had allegedly urged him to commit.[7] The Bank's own "Audit Committee By-Laws" emphasize the importance of maintaining auditors'

---

1. The terms of 12 U.S.C. § 24(Fifth) provide: "Upon duly making and filing articles of association and an organization certificate *a national banking association shall become ... a body corporate, and as such, ... it shall have power—*
"* * *
"Fifth. To elect or appoint directors, and *by its board of directors* to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, *dismiss such officers* or any of them *at pleasure*, and appoint others to fill their places." (Emphasis added.)

2. See Part I of this opinion for an explanation of the plaintiff's *Burk*-based tort theory.

3. In *Burk v. K-Mart Corporation, infra* note 4 at 27, this court expressly rejected the notion that an implied covenant of good faith is included in every at-will employment contract.

4. Okl., 770 P.2d 24, 28 (1989).

5. *Burk v. K-Mart Corporation, supra* note 4 at 26. Generally in Oklahoma an employment contract for an indefinite term may be terminated at the will of either party without contractual

liability. *Hinson v. Cameron,* Okl., 742 P.2d 549, 552 (1987).

6. *Burk v. K-Mart Corporation, supra* note 4 at 29.

7. In support of the allegation that his discharge was a clear violation of public policy, Sargent relies upon the following statutes: (1) 21 O.S. 1981 § 454, which makes it a crime to willfully destroy any paper or other matter which "is about to be produced in evidence [in a] trial" (at the time of plaintiff's dismissal the Bank's holding company, Central Service Corporation (or CSC), along with several Bank officers and directors were defendants in a then pending class action brought by shareholders of another banking entity); (2) 21 O.S.1981 § 546, which prohibits deceit with the intent to prevent a party to an action from obtaining any book or paper; (3) 21 O.S.1981 § 1590, which makes any officer or employee of a corporation who falsifies, alters or destroys any records of the business guilty of second degree forgery; (4) 21 O.S.1981 § 1635, which makes it a crime for any corporate officer to destroy or falsify any papers of the corporation with intent to defraud; 18 U.S.C. § 1005, which specifically prohibits *bank*

"independence" as well as their free and full access to necessary information.[8] Without doubt, Sargent states a *Burk*-type tort claim.

Bank moved for summary judgment, arguing, *inter alia*, that the National Bank Act (12 U.S.C. § 24(Fifth)), which expressly empowers national banking associations to dismiss officers "at pleasure" (or at will), *pre-empts* Oklahoma law and hence bars the plaintiff's claim. The Bank sought to qualify for pre-emption's protection by making the following assertions: (a) the Bank is a national banking association,[9] (b) the plaintiff was elected an "officer" by the Bank's board of directors (Board) and (c) the Board delegated to the chief executive officer/chairman of the Board (CEO) the authority to discharge the plaintiff.

After considering the parties' evidentiary materials, the trial court gave summary judgment to the Bank.[10] The Court of Appeals affirmed, holding that pre-emption immunizes the Bank from liability on this claim and the evidentiary materials show an absence of genuine controversy over material fact issues. We granted certiorari upon Sargent's petition.

## II.

## DOES § 24(FIFTH) OF THE NATIONAL BANK ACT PRE–EMPT SARGENT'S THEORIES OF RECOVERY?

The "power to pre-empt state law is derived from the Supremacy Clause of Art. VI of the Federal Constitution."[11] *Congressional intent* is the primary focus of every pre-emption inquiry.[12] The National

---

officers and employees from making any false entry in any report with intent to injure or deceive.

**8.** According to its bylaws the Audit Committee's purpose is:

"to fulfill the board's responsibilities regarding the bank's financial information prepared by management for distribution to stockholders, the general public, and regulatory agencies. In this regard, the committee oversees the internal audit department as well as the independent external auditors. *By providing a forum for presentation of internal and external audit reports and controlling auditor selection and compensation, the committee enhances the independence of both audit groups.*"
The committee is authorized
"*to request any information it feels necessary from all employees of the bank* to fulfill its responsibilities as established by the board. The committee will, for the most part, work through and with the internal audit department, however, *all other departments are to be responsive to the committee's requests. The committee's results and findings are to be presented to the board which must approve any action to be taken.*" (Emphasis added.)

**9.** It is not disputed that the Bank is a national banking association within the meaning of § 24(Fifth).

**10.** On granting "summary judgment" to the Bank the trial court had also given Sargent leave to amend his petition by adding allegations of deceit, which were later dismissed as insufficient to state a claim upon which relief could be granted. Since the earlier ruling did

not dispose of the entire claim, the Bank's so-called summary judgment was actually a partial summary adjudication. *Reams v. Tulsa Cable Television, Inc.*, Okl., 604 P.2d 373, 374 (1979). Sargent's appeal is nonetheless free from jurisdictional infirmity because he correctly calculated appeal time to run from the day of the *later* ruling.

Sargent made no attempt in his brief to obtain corrective relief from his amended pleading's dismissal. For purposes of this certiorari proceeding we treat the "deceit" portion of the claim as abandoned, and the order which precipitated the appeal as a judgment. The trial court had, in a later journal entry, characterized its summary disposition favoring the Bank as a *dismissal.* This is of no legal consequence. We still view the ruling as a summary judgment because materials outside the pleadings were presented by both parties and considered by the trial judge. See 12 O.S.Supp.1984 § 2012(B), whose pertinent terms provide:
"* * * *If*, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, *matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment* and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by the rules for summary judgment. * * *"
(Emphasis added.)

**11.** *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 288, 105 S.Ct. 1904, 1909, 85 L.Ed.2d 206 (1985).

**12.** *California Federal Sav. and Loan Ass'n v. Guerra*, 479 U.S. 272, 284, 107 S.Ct. 683, 691, 93 L.Ed.2d 613 (1987); *Silkwood v. Kerr–McGee*

Bank Act created "for a public purpose"[13]

"a system of national banks as federal instrumentalities to perform various functions such as providing circulating medium and government credit, as well as financing commerce and acting as private depositaries. Some of their functions, especially as a source for federal credit, depend upon their success in attracting private deposits."[14]

A state may attempt to affect the conduct of bank officials so long as the exercise of their authority does not conflict with, or frustrate the purposes of, federal law or impair the efficiency of banks to perform their statutory duties.[15] In short, "national banks *are subject to state laws, unless those laws infringe the national banking statutes or impose an undue burden on the performance of the banks' functions.*"[16] (Emphasis added.)

By pressing his *Burk* tort theory, Sargent seeks to recover against the Bank for what at first blush may appear as the very act which federal law expressly empowers national banks to do—dismiss officers "at pleasure." In reality Sargent's tort claim avers that the Bank's "pleasure" represents a violation of not only this state's public policy, but also of the purposes for which the National Bank Act was enacted—"to insure the safe management" of bank affairs;[17] "to minimize the risks of loss or insolvency."[18] A demand to destroy or alter a bank auditor's report clearly runs counter to the principles which the federal code espouses.

Implementation of the Act's purposes is aided by the free hand to hire and fire at will bestowed upon banks *for the sake of the institution's financial integrity.*[19] Section 24(Fifth) "place[s] the fullest responsibility upon *the directors* by giving them the *right* to discharge such officers at pleasure."[20] (Emphasis added.) We view this right as not without a limit. *When, as in this case, the public policy whose violation gives rise to a Burk claim parallels that of the federal law which is sought to be invoked as a shield from liability, pre-emption is not available as a defense.*[21]

As for Sargent's other theories, the overwhelming majority of courts adopt

Corp., 464 U.S. 238, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984).

**13.** *Davis v. Elmira Sav. Bank,* 161 U.S. 275, 283, 16 S.Ct. 502, 503, 40 L.Ed. 700 (1896).

**14.** *Franklin Nat. Bank of Franklin Square v. People,* 347 U.S. 373, 375, 74 S.Ct. 550, 552, 98 L.Ed. 767 (1954).

**15.** *Davis v. Elmira Sav. Bank, supra* note 13, 161 U.S. at 283, 16 S.Ct. at 503.

**16.** *Anderson Nat. Bank v. Luckett,* 321 U.S. 233, 248, 64 S.Ct. 599, 607, 88 L.Ed. 692 (1944). See also *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 1883, 100 L.Ed.2d 410 (1988) (because resolution of the state-law claim did not depend upon the meaning of a collective-bargaining agreement, § 301(a) of the Labor Management Relations Act of 1947 did not pre-empt state law.)

**17.** See *Second Nat. Bank v. United States Fidelity & G. Co.,* 266 F. 489, 492 (4th Cir.1920).

**18.** *Russell v. Continental Ill. Nat. Bank & T. Co. of Chicago,* 479 F.2d 131, 133 (7th Cir.1973), *cert. den.* 414 U.S. 1040, 94 S.Ct. 541, 38 L.Ed.2d 331; *Golar v. Daniels & Bell, Inc.,* 533 F.Supp. 1021, 1026 (S.D.N.Y.1982).

**19.** See *Armano v. Federal Reserve Bank of Boston,* 468 F.Supp. 674, 676 (D.Mass.1979), where, in dealing with a provision of the Federal Reserve Act (12 U.S.C. § 221 et seq.) virtually identical to § 24(Fifth) of the National Bank Act, the court observed that "Congress clearly sought to protect Federal reserve banks from unnecessary restrictions *in carrying out their financial responsibility.*" (Emphasis added.)

**20.** *Copeland v. Melrose Nat. Bank,* 229 A.D. 311, 241 N.Y.S. 429, 430 (1930).

**21.** See *Todd v. Frank's Tong Service, Inc.,* Okl., 784 P.2d 47, 50 (1990). In *Todd* the federal Surface Transportation Assistance Act was invoked as a bar to a *Burk* claim. This court declined to uphold the pre-emption challenge because the claim neither "conflict[ed] with the federal regulation nor ... detract[ed] from the objectives of the federal regulatory scheme. [A]llowing the state court claim appear[ed] to further the purpose of Congress in its enactment."

See also *Schey v. Trans Pacific Nat. Bancorp,* 217 Cal.App.3d 432, 266 Cal.Rptr. 39, 44 (1 Dist. 1990), *cert. den.,* — U.S. —, 111 S.Ct. 144, 112 L.Ed.2d 110 (1990), where the court held that the "'at pleasure' language of section 24, Fifth, was not intended to allow a national bank offi-

the view that the § 24(Fifth) power to dismiss at will *cannot be impeded by any contract, express or implied, particularly when an attempt is made to fix the duration of employment.*[22] We accept the prevailing rationale that since the National Bank Act is an enabling statute, national banks "cannot rightfully exercise any powers except those expressly granted, or which are incidental to carrying on the business for which they are established."[23] This rule means that banks cannot be bound by any kind of agreement—whether its terms be express or implied under state law—that infringes their paramount right to dismiss at pleasure. The Bank's immunity from contractual liability hence depends upon whether § 24(Fifth) avails as a defense to the claim's theory invoked.

The trial court agreed with the Bank that in this case there are no fact issues to be tried because (1) Sargent was a bank officer at the time of his discharge and (2) the termination was "authorized" by the Bank's board of directors. Although we agree that only *officers* may be dismissed at pleasure, the federal law's applicability depends also on whether it was the board of directors that actually decided, approved or ratified the discharge. The authority to dismiss at pleasure is more fully discussed in Part III(B) of this opinion. The next question to be considered is whether the evidentiary materials in the record support the summary judgment given to the Bank.

## III.

## WAS THE BANK ENTITLED TO § 24(FIFTH) IMMUNITY AS A MATTER OF LAW?

### A.
### *"Officer" Status*

Neither party disputes that officer status in a national bank is a *sine qua non* requirement for raising § 24(Fifth) as a bar to *ex contractu* actionability.[24] In its quest for summary judgment the Bank had tendered a copy of a board meeting's minutes showing Sargent had been made an officer of the Bank. His title was "Vice President, Auditor." This act by the Board *followed* Sargent's transfer from the Bank's holding company, Central Service Corporation (CSC). During his deposition Sargent admitted to having been employed by the bank, transferred first to CSC and then back to the Bank. He also acknowledged being made a Bank officer in 1978—before his stint with the holding company. We find one other statement most significant. Sargent himself characterized his transfers—from the Bank to CSC, and back to the Bank—as "lateral" movements. From this description the inference may easily be drawn that upon his return to the Bank he resumed former officer status. All these factors leave little doubt concerning the absence of the fact issue regarding Sargent's bank officer status.

Sargent nonetheless points out in his brief-in-chief that when asked at his deposi-

cer to be discharged in retaliation for reporting regulatory violations to the Comptroller of the Currency. It therefore does not preempt California law allowing a claim for tortious discharge under such circumstances."

**22.** See, e.g., *Alegria v. Idaho First Nat. Bank,* 111 Idaho 314, 723 P.2d 858, 860 (1986); *Alfano v. First Nat. Bank of Highland,* 111 A.D.2d 960, 490 N.Y.S.2d 56, 58 (3 Dept.1985); *Ambro v. American Nat. Bank and Trust Co.,* 152 Mich.App. 613, 394 N.W.2d 46, 49 (1986); *Citizens State Bk. of N.J. v. Libertelli,* 215 N.J.Super. 190, 521 A.2d 867, 868 (A.D.1987); *Kemper v. First Nat. Bank in Newton,* 94 Ill.App.3d 169, 49 Ill.Dec. 799, 801, 418 N.E.2d 819, 821 (1981); *McGeehan v. Bank of New Hampshire, Nat. Ass'n,* 123 N.H. 83, 455 A.2d 1054, 1055 (1983); *Rohde v. First Deposit Nat. Bank,* 127 N.H. 107, 497 A.2d 1214,

1216 (1985); *Schillinger v. Wells Fargo Bank, N.A.,* 219 Cal.App.3d 570, 268 Cal.Rptr. 368, 373 (1 Dist.1990); *Rankin v. Tygard,* 198 F. 795, 799 (8th Cir.1912). See also generally, Annot. Construction, application, and effect of statutory provision that directors of corporation may remove officer, agent, or employee at pleasure, 111 A.L.R. 894.

**23.** *California Nat. Bank v. Kennedy,* 167 U.S. 362, 366, 17 S.Ct. 831, 833, 42 L.Ed. 198 (1897); *Copeland v. Melrose Nat. Bank, supra* note 20, 241 N.Y.S. at 430.

**24.** See *Wiskotoni v. Michigan Nat. Bank–West,* 716 F.2d 378, 387 (6th Cir.1983) (officers *must* be appointed and dismissed by the bank's board of directors).

tion whether he was a Bank officer, he answered "no." Absent any reference to the period of employment in question, Sargent's response could mean he was not an officer of the Bank while he was working for its holding company. In any event, we treat this inconclusive evidentiary element as cured by Sargent's insistence in his appellate brief that he "was not just any bank officer." [25]

Other documents as well were tendered by the plaintiff as proof of his officer or agency status under the holding company. One item, entitled "Central Service Corporation Personnel Record," contains the following statement: "The Board of Directors of the Central Service Corporation approved the title of VP, Auditor for Major Sargent to be effective 4–17–85." Another document, a "Central Service Corporation Officer/Exempt Employees Performance Evaluation" form shows the CEO as one of the signatories.

Whatever evidentiary effect may be ascribed to these and other documents which we need not discuss, we conclude they lack the probative strength necessary to overcome *either* the conclusiveness of Bank's overwhelming materials *or* the force of Sargent's admissions. For these reasons we hold there is no question but that the plaintiff was an officer at the time of his dismissal from Bank's employ.

### B.

### *The Authority to Dismiss "At Pleasure"*

■ In urging that the CEO was authorized *to discharge* Sargent, the Bank relied *solely* on its own bylaws which declare that the Board's authority to remove officers is *delegated* to "Executive Officers and Senior Vice Presidents." Before probing through the evidentiary materials in the

record to assess the absence of a fact issue in this regard, we must decide whether the § 24(Fifth) power to dismiss may be delegated by a national bank's board of directors. We hold it may not.

■ By clear and simple terms, § 24(Fifth) mandates that "a national banking association shall become ... a body corporate, and as such ... it shall have power * * * *by its board of directors* to appoint ... officers ... [and] *dismiss such officers or any of them at pleasure....*" (Emphasis added.) The statute not only defines the Board's power as one permitting an officer's discharge at will, but it specifies that this power is to be exercised *on behalf of the "body corporate." No other entity is given the statutory right to act for the bank in terminating an officer's employment at will.* Had Congress intended to place chief executive officers on the same plane that boards occupy, it would have done so. A national bank cannot bestow unto either itself or its chief officer—*via* bylaws—any more authority (or immunity) than that which is conferred by the federal law.[26]

■ The Bank insists that the validity of its bylaws, and in particular its delegation of the statutory dismissal power to its CEO, is supported by the terms of 12 C.F.R. § 7.4425, which provide:

"The board of directors of a national bank may not delegate *responsibility* for its duties but may assign the *performance* thereof." (Emphasis added.)

If this provision is to be interpreted consistently with § 24(Fifth), we must conclude that the regulation does no more than sanction the assignment of performance or *execution* of a decision which has already been made by the board. Carrying out an order is to performance what *deciding an officer's fate* is to fulfilling a responsibility.

---

**25.** Admissions in an appellate brief are acceptable as material supplementing the record. *Deffenbaugh v. Hudson,* Okl., 791 P.2d 84, 85 (1990); *Sooner Fed. S & L v. Okl. Cent. Cr. Union,* Okl., 790 P.2d 526, 527 n. 1 (1990);

*Womack v. City of Oklahoma City,* Okl., 726 P.2d 1178, 1181 n. 8 (1986).

**26.** See the cases cited *supra* note 23.

In short, the *responsibility* for deciding whether to dismiss an officer necessarily includes the nondelegable duty to actually make that decision.

■ The record contains nothing to indicate that the Board had either approved or ratified the plaintiff's March 24, 1986 termination for "cause." Indeed, the CEO states in his affidavit: "On or about March 24, 1986 ... I discharged the Plaintiff from CNB [the Bank]." According to the minutes of the March 19, 1986 board meeting, Sargent, along with many others, came to be slated for "layoff" to "reduce overhead." The Plaintiff's last day was to have been June 16, 1986. This information leaves no doubt that a fact issue still exists on whether Sargent's dismissal was effected *by the Board.*

In sum, the summary judgment record does not establish a federally protected discharge—i.e., one which has been accomplished by the only entity with the § 24(Fifth) power to dismiss at will—the board of directors. Should other fact issues regarding the federal law's applicability develop on remand and take the plaintiff out of the statute's purview, pre-emption will not avail as a bar to actionability on Sargent's contract-related theories.

IV.

THE COUNTER–APPEAL

■ The Bank had sought corrective relief from the trial court's *denial* of its counsel-fee request grounded on 12 O.S. 1981 § 936. This section entitles the prevailing party to counsel-fee award in an action to recover "for labor or services." Sargent had urged that the Bank's counter-appeal be dismissed for failure timely to serve a copy of the petition-in-error and had requested an opportunity to respond. This court permitted the response but deferred its ruling on the dismissal quest. We now deny Sargent's motion. The delay in receiving a copy of the petition-in-error is neither a jurisdictional defect nor has it worked prejudice to Sargent's rights.

Because the Bank's theory on which summary judgment was secured cannot stand, we need not today consider whether the Bank's nisi prius victory, based on federal pre-emption by § 24(Fifth), would have entitled it to a counsel-fee award that stands authorized by § 936.

THE COURT OF APPEALS' OPINION IS VACATED; THE TRIAL COURT'S SUMMARY JUDGMENT IS REVERSED; CAUSE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS PRONOUNCEMENT.

HODGES, V.C.J., and LAVENDER, DOOLIN, HARGRAVE and ALMA WILSON, JJ., concur.

KAUGER, J., concurs in result.

SUMMERS, J., concurs in part and dissents in part.

SIMMS, J., dissents.