410 S.E.2d 607 (1991)
BOARD OF SUPERVISORS OF FAUQUIER COUNTY
v.
Frank E. MACHNICK, Jr., et al.
Record No. 910176.
Supreme Court of Virginia.
November 8, 1991.
Douglas L. Fleming, Jr., Leesburg, Robert S. Corish, Merrifield (Robert E. Sevila, Leesburg, John J. Brandt, Merrifield, Paul S. McCulla, Deputy County Atty., Warrenton, Hanes, Sevila, Saunders & McCahill, Leesburg, Slenker, Brandt, Jennings & Johnston, Merrifield, on briefs), for appellant.
David H. Moyes, Leesburg (Moyes & Anderson, on brief), for appellees.
Present: All the Justices.
KEENAN, Justice.
In this appeal, the Board of Supervisors of Fauquier County (Board) seeks reversal of a decision in which the trial court held that the Fauquier County Zoning Ordinance (Ordinance) did not support the Board's denial of a final subdivision plan submitted to it by Frank and Leeda Machnick.[1] We conclude that the trial court improperly construed the applicable Ordinance provisions.
The material facts in this case are not in dispute. In July 1988, the Machnicks filed a preliminary subdivision plan. They proposed a "conventional" rather than "cluster" subdivision of their 116.2-acre parcel (subject property) into seven lots. The subject property is located in the Rural Agricultural (RA) zoning district.
Section 15-200 of the Ordinance defines "conventional" subdivision as the subdivision of a lot in accordance with specified lot size requirements and regulations. That Section also defines "cluster" subdivision as "[a]n alternative means of subdividing a lot premised on the concept of reducing lot size requirements for the provision of open *608 space in conjunction with the development." In defense of their proposed plan, the Machnicks's counsel represented to the Planning Commission (Commission) that they had evaluated clustering the lots but decided that "the layout of the land renders towards conventional lots."
The final subdivision plan was filed in December 1988. In response to an issue raised by the Commission, the Machnicks agreed to reduce the total number of lots from seven to six. The Commission recommended that the Board approve the final plan with six lots. However, the Board denied the plan, finding that it did not provide 85% open space as required by the Ordinance.
Section 2-406(5) is located in the "General Regulations" portion of the Ordinance which is applicable to all zoning districts. It provides that: "In the RC [Rural Conservation] & RA zoning districts the Board shall require 85% open space in order to accomplish the purposes in 5-102.3, .4 and.5 unless the Board makes a finding that a lesser amount would accomplish the purposes of the above sections." The standards set forth in §§ 5-102.3, .4, and .5 address such concerns as the protection of natural resources and features, scenic resources and qualities, and compatibility with existing uses in the neighborhood.
In moving that the Machnicks's plan be denied, Supervisor Herbert specifically cited § 2-406(5), as well as the fact that the subject property is bordered on three sides by an active farm. In response, the Machnicks stated to the Board that clustering (which was necessary to meet the 85% open space provision) was not desirable because only one spot on the property could accommodate the clustered homes. The Board voted unanimously to deny the Machnicks's plan. The official Board minutes reflect that the plan was denied "because it did not meet the 85% open space requirement of the Ordinance."
The Machnicks filed an amended bill of complaint in the trial court seeking injunctive relief, declaratory judgment, and compensatory damages. They contended that because their subdivision plan was for "Residential Development, Minor," rather than "Residential Development, Major," as defined in the Ordinance, their conventional subdivision was a permitted use in the RA district and not subject to the provisions of § 2-406(5). "Residential Development, Major" plans are allowed in RA districts only by special exception.
The Machnicks also argued to the trial court that pursuant to § 2-406(2), only the Planning Commission, and not the Board of Supervisors, may require the developers of a proposed conventional subdivision to cluster their lots. Section 2-406(2) provides that:
In a proposed residential subdivision, a cluster subdivision may be required upon the determination by the Commission that cluster development will promote the public interest by:
A. Conserving scenic and/or natural, and/or historic resources, or
B. Assisting in mitigating agriculture/residential interface problems, or
C. Assisting in maintaining the existing general character of the area and/or preserving land values.
In its letter opinion, the trial court ordered the Board to execute a Certificate of Approval for the Machnicks's plan. The trial court held that the Board, by its zoning ordinance, had delegated to the Commission the authority to require clustering. It cited § 2-406(2) in support of its holding. The trial court further found that since the title to § 2-406 was "Cluster Subdivision:"
[the] open space requirement thereunder, as well as other provisions contained in its subsections, relate to `Cluster Subdivision.' The Court finds no such requirement in that Ordinance for a `minor' and `conventional' subdivision.
Based on these findings, the trial court concluded that the Board had applied erroneous principles of law in denying the Machnicks's final subdivision plan.
The trial court did not address § 3-408 in its letter opinion or final order. Section 3-408 sets forth minimum open space requirements for all zoning districts. Footnote 8 of that section contains the following reference provision: "For cluster requirements *609 in all Residential and Rural Zoning Districts, see § 2-406."
The Board argues that the trial court erred: (1) in failing to interpret § 2-406(5) and § 3-408 as requiring the application of open space requirements to all RC and RA district plans, regardless of whether the plans submitted propose "major conventional," "minor conventional" or "cluster" subdivision; and (2) in interpreting § 2-406(2) as limiting the authority to require clustering to the Planning Commission, not the Board.

I.
The Board contends that since the subject property is in a RA district, pursuant to § 2-406(5), 85% open space is required unless the Board makes a finding that a lesser amount would accomplish the purposes of §§ 5-102.3, .4 and .5. In response, the Machnicks contend that the clustering regulations in § 2-406 are not applicable to a given plan unless an applicant voluntarily chooses to cluster, or unless the Commission requires clustering under § 2-406(2). They argue that the title to § 2-406, "Cluster Subdivision", evinces a clear legislative intent that it not be applied to all subdivisions. We disagree with the Machnicks.
The plain language of § 2-406(5) mandates an 85% open space requirement in RA districts unless the Board makes certain findings that this is not necessary. No such findings were made in the case before us. Where the language in an ordinance or statute is plain and unambiguous, it must be given that plain meaning or intent. Brown v. Lukhard, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985).
In reaching this conclusion, we do not dispute the Machnicks's contention that the title to § 2-406, "Cluster Subdivision," must be given due consideration in determining whether the provisions contained therein apply to their subdivision plan. See Jordan v. Town of South Boston, 138 Va. 838, 845, 122 S.E. 265, 267 (1924). However, we find that consideration of the title "Cluster Subdivision" does not lead us to conclude that § 2-406 is not applicable to all residential subdivisions.
The Machnicks themselves concede that § 2-406(2) applies to all residential subdivisions, whether conventional or cluster. Since that section, as well as § 2-406(5), come under the general title of § 2-406, "Cluster Subdivision," we find no merit in their argument that § 2-406(5) is restricted in scope to exclude "minor" conventional subdivisions, while § 2-406(2) is not. Further, nothing in the plain language of § 2-406(5) indicates that it is to be restricted in such a manner. Thus, we conclude that the title "Cluster Subdivision" details clustering requirements applicable to all requests for residential subdivision including both "major" and "minor" conventional development plans.
The fact that § 2-406(5) incorporates by reference some, but not all, of the standards of § 5-102, does not alter our conclusion that the language of § 2-406(5) is plain and unambiguous. Section 2-406(5), unlike § 5-102, contains no language limiting its applicability to major residential developments. Further, nothing in the content of the standards incorporated from § 5-102 suggests that they would be inapplicable to minor conventional subdivisions. Thus, we conclude that the incorporation of some of the standards of § 5-102 into § 2-406(5) does not restrict the application of § 2-406(5) to "major" residential developments only.
We further find that § 3-408 does not compel a different result. Footnote 8 specifically references § 2-406 for determination of cluster requirements in all zoning districts. Footnote 9 lists an open space requirement applicable to "major" subdivisions in RA districts. A "General Note" appearing after those footnotes provides that: "A hyphen as an entry in the chart above indicates that either that item is not applicable or that particular item is not regulated in that case." A hyphen appears under footnotes 8 and 9 in § 3-408. We cannot, as urged by the Machnicks, interpret the hyphen under footnote 9 as meaning there are no other minimum open space requirements in RA districts. To do so *610 would directly contradict footnote 8 which refers to § 2-406 for cluster requirements in all districts.

II.
We also disagree with the trial court's conclusion that under the Ordinance, the Commission has authority to require clustering in "minor" subdivisions, but that the Board does not. Such a position distorts the role of the Commission. First, under the Ordinance, the Commission has no authority to require any applicant to cluster. Section 2-406(2) provides that: "In a proposed residential subdivision, a cluster subdivision may be required upon the determination by the Commission that cluster development will promote the public interest...." We read this provision to mean that clustering may be required by the Board if the Commission makes certain findings in its recommendations.
The role of the Commission is to make recommendations to the Board. Section 10-7 of the Fauquier County Subdivision Ordinance specifically provides that: "The Commission shall consider final plats and make recommendations to the governing body." (Emphasis added.) The Commission does not have authority to require the Board, which is the governing body, to approve any subdivision plan. Rather, it makes recommendations to the Board which the Board may accept or reject within its legislative authority. As set forth in § 10-7, "[t]he governing body retains unto itself the authority of final approval of final plats which authority it may delegate to its agent." There is no evidence in the record before us that the Board delegated its final approval authority to the Commission. Therefore, we conclude that while the Board may require clustering under § 2-406(2) if the Commission makes certain findings in its recommendations, under § 2-406(5) the Board must require an 85% open space requirement in RA districts. Had the Board intended that § 2-406(5) apply only to "major" subdivisions which require special exception approval, it could have so stated either in that section or in Article 5 which contains provisions for special exceptions.
For the reasons stated, we will reverse the judgment of the trial court and will enter final judgment dismissing the amended bill of complaint.[2]
Reversed and final judgment.
NOTES
[1] We construe the Ordinance as it existed on February 21, 1989, the date of the Board's denial of the subdivision plan at issue in this case.
[2] Since we reverse the judgment of the trial court, we do not reach the Machnicks's assignment of cross-error regarding whether a notice of claim must be filed pursuant to Code § 15.1-550 et seq., prior to bringing an action for damages against a local governing body in the circuit court under 42 U.S.C. § 1983.