## CIRCUIT COURT OF THE CITY OF ROANOKE

Wallace I. Allen

v.

Benjamin P. Jenkins, III, and
First Union National Bank of Virginia

May 3, 1995

Case No. CL94000650

By Judge Clifford R. Weckstein

Wallace I. Allen has brought this suit against his former employer, First Union National Bank of Virginia. He alleges that on August 2, 1993, he was the bank's "highest ranking African-American employee," when he was terminated because of his age and race, contrary to the public policy of Virginia. First Union, which denies that it wrongfully discharged Allen, says that this state law claim is barred by the National Bank Act of 1864, 12 U.S.C. § 24 (Fifth), which provides that a national bank's officers serve at the pleasure of its board of directors.

The immunity of the National Bank Act has been raised by demurrer. A demurrer admits "the truth of all material facts properly pleaded . . . . and those which may fairly and justly be inferred from the facts alleged." *Rosillo v. Winters*, 235 Va. 268, 270, 36 S.E.2d 717 (1988). A judge considering a demurrer thus must construe the facts in the light most favorable to the plaintiff, granting him all reasonable factual inferences fairly to be drawn from the allegations of the motion for judgment. *See Commercial Construction Specialties, Inc. v. ACM Construction Management Co.*, 242 Va. 102, 103, 405 S.E.2d 852 (1991).

The parties, by counsel, have agreed that I may consider documents filed by First Union, along with the motion for judgment, in reaching my decision on the demurrer. Exhibits attached to the motion for judgment are, of course, also properly before me. *Flippo v. F & L Land Co.*, 241 Va. 15, 17, 400 S.E.2d 156 (1991).

Allen was a senior vice president of Dominion Bank, National Association. On July 22, 1993, Dominion Bank's name was changed to First Union National Bank of Virginia. For present purposes, I will assume (contrary to Allen's argument) that he was an "officer" of First Union, within the meaning of the Act. However, because he was discharged by the bank's president, and not by the bank's board of directors, as 12 U.S.C. § 24 (Fifth) expressly requires, I find that his claims are not precluded by the Act. Therefore, the demurrer will be overruled.

Under the National Bank Act, each national bank has the power, *inter alia*:

> Fifth. To elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places.

*Id.* This provision may hereafter be referred to as "Section 24 (Fifth)."

Congress adopted the Act (known until 1874 as the National Currency Act) in 1864 with the goals of developing a national currency, providing a financial market for civil war bonds issued by the federal government, and developing national banks as depositories of government funds. *See Wells Fargo Bank v. Superior Court*, 53 Cal. 3d 1082, 282 Cal. Rptr. 841, 811 P.2d 1025, 1028 (1991). "The power of the board of directors of a national bank to hire and fire officers 'at pleasure' is as old as the national bank system itself." M. B. W. Sinclair, "Employment at Pleasure: An Idea Whose Time Has Passed," 23 U. Tol. L. Rev. 531 (Spring, 1992).

"[T]he power to dismiss a bank officer at will reflects the Congressional mandate to establish an independent national system in order to maintain the stability of, and promote the welfare of, national banks." *Alegria v. Idaho First National Bank*, 111 Idaho 314, 723 P.2d 858, 860 (1986). "Observation and experience alike teach," the court observed in *Westervelt v. Mohrenstecher*, 76 F. 118, 122 (8th Cir. 1896), one of the earliest cases to consider the at-will termination provision of the Act, "that it is essential to the safety and prosperity of banking institutions that the active officers, to whose integrity and discretion the moneys and property of the bank and its customers are intrusted, should be subject to immediate removal whenever the suspicion of faithlessness or negligence attaches to them." *See generally*, Bray Hammond, *Banks and Politics in America*, Princeton University Press, 1957, at 724-28; and Sinclair, *supra*.

Thus, for approximately a century (and notwithstanding the fact that the purposes for which the Act was adopted have long since been accomplished), Section 24 (Fifth) "has been consistently interpreted to mean that the board of directors of a national bank may dismiss an officer without liability for breach of the agreement to employ. [Citations omitted.]" *Mackey v. Pioneer National Bank,* 867 F.2d 520, 524 (9th Cir. 1989). In fact, it is universally held that "[a]n agreement which attempts to circumvent the complete discretion of a national bank's board of directors to terminate an officer at will is void as against public policy. [Citations omitted.]." *Id.* As a general proposition, then, Section 24 (Fifth) effectively grants immunity from suit to a National Bank whose board of directors has dismissed an officer.

Because of the view I take of this case, I need not address the question of whether the Act would provide a National Bank with immunity from suit if the bank dismissed an officer in violation of a state public policy which is consistent with the federal statute's purposes. *Compare Sargent v. Central National Bank,* 809 P.2d 1298 (Okla. 1991), *with Bowman v. State Bank of Keysville,* 229 Va. 534, 331 S.E.2d 797 (1985).

In this case, however, the plaintiff does not allege, and First Union does not argue, that the bank's board of directors, directly, dismissed Allen.

Allen's motion for judgment avers that he was terminated by First Union and Benjamin P. Jenkins, III, its president and chief operating officer. He has appended to, and incorporated in, the motion for judgment, a letter from a senior vice president and deputy general counsel of First Union, which states that "Allen's displacement was based on management's decision . . . ."

In its memoranda and motions, the bank concedes that Allen was discharged by its president, Jenkins. First Union argues that the motion for judgment alleges that the president *appointed* Allen. The bank's bylaws, First Union notes, authorized "any officer appointed by another to be removed, with or without cause, by the Board of Directors *or by such appointing officer* whenever the Board of Directors, or such appointing officer, in its or his discretion, shall consider that the best interests of the Corporation will be served thereby." (Italics added.)

The bank has filed and "craved oyer of" a resolution of the board of directors showing that Allen was elected an officer of Dominion Bank, N.A., on April 27, 1993, and a board resolution showing that Allen was *not* among the persons elected officers of First Union National Bank of Virginia on April 26, 1994. The bank thus contends that the president's

dismissal of Allen was ratified by the board when, some eight months later, the board failed to elect Allen to an office.

(First Union exceeds a fair reading of the pleadings — and of the documents of which it has craved oyer — when it argues that the president "appointed" Allen. In his motion for judgment, Allen avers that he "began working for Dominion Bank (the predecessor-in-interest to [First Union]) in 1970. In 1986 . . . he was named Branch Administrator. In 1990, he was promoted to Senior Vice President . . . ." He refers to and incorporates a letter from Jenkins (identified below his signature as "Senior Merger Team Coordinator — Virginia"), dated December 10, 1992, which reads, in part: "Thank you for your patience and cooperation while the Managers from both Dominion and First Union completed the first step of the merger process . . . . We were impressed with your qualifications and experience and it is my pleasure to confirm that you will be joining the First Union team at merger consummation (assumed to be on or before April 1, 1993)." This letter, according to the letter from the First Union senior vice president and deputy general counsel also incorporated in the motion for judgment "was a standard letter provided to all employees who would be remaining with First Union." Article III, Section 1, of the Bylaws of Dominion Bank, N.A., provided that "[t]he officers of the Association to be appointed by the Board shall be a Chairman of the Board, a President . . . and such other officers and agents as the Board may from time to time deem desirable for the proper conduct of the affairs of the Association." Article III, Section 4, provided that the chairman of the board "shall have the authority to appoint any officer up to and including the rank of Senior Vice President." Similarly, Article III, Section 5, provided that the president "shall have the authority to appoint any officer up to and including the rank of Senior Vice President." As noted above, First Union has craved oyer of a resolution of Dominion's board, electing Allen as a senior vice president. Accepting the truth of all well-pleaded facts, reading the motion for judgment, the incorporated documents, and the documents filed by First Union in the light most favorable to the plaintiff, and granting the plaintiff all inferences fairly to be drawn therefrom, I cannot say that Allen was appointed an officer by the president, rather than by the board or by the chairman, and I cannot draw the inference that, when the board did not elect Allen as an officer in April of 1994, it made his August, 1993 termination an action of the board; I cannot, under the rules applicable to demurrers, read the motion for judgment as First Union would have me read it.)

There is something of a conflict among the authorities about whether the shield of the National Bank Act is available to a bank when an officer is terminated by another officer, rather than by action of the board of directors. I am satisfied that the Virginia Supreme Court would apply the plain language of the Act and, like the Supreme Courts of California and Oklahoma, would conclude that the Act's immunity is not available to a national bank under such circumstances. *See Wells Fargo Bank v. Superior Court*, 53 Cal. 3d 1082, 282 Cal. Rptr. 841, 811 P.2d 1025 (1991); *Sargent v. Central National Bank & Trust Company of Enid*, 809 P.2d 1298 (Okla. 1991).

"By clear and simple terms," the Oklahoma Supreme Court said in *Sargent*:

> § 24 (Fifth) mandates that "a national banking association shall become . . . a body corporate, and as such . . . it shall have power . . . . by its board of directors to appoint . . . officers . . . [and] dismiss such officers or any of them at pleasure . . . ." The statute not only defines the Board's power as one permitting an officer's discharge at will, but it specifies that this power is to be exercised on behalf of the "body corporate." No other entity is given the statutory right to act for the bank in terminating an officer's employment at will. Had Congress intended to place chief executive officers on the same plane that boards occupy, it would have done so. A national bank cannot bestow unto either itself or its chief officer — via bylaws — any more authority (or immunity) than that which is conferred by the federal law.

> The Bank insists that the validity of its bylaws, and in particular its delegation of the statutory dismissal power to its CEO, is supported by the terms of 12 C.F.R. § 7.4425, which provide: "The board of directors of a national bank may not delegate responsibility for its duties but may assign the performance thereof."

> If this provision is to be interpreted consistently with § 24 (Fifth), we must conclude that the regulation does no more than sanction the assignment of performance or execution of a decision which has already been made by the board. Carrying out an order is to performance what deciding an officer's fate is to fulfilling a responsibility. In short, the responsibility for deciding

whether to dismiss an officer necessarily includes the nondelegable duty to actually make that decision.

*Id.*, 809 P.2d at 1304-1305.

In a well-written and carefully reasoned decision, the California Supreme Court, in *Wells Fargo Bank*, reached the same conclusion.

The California court began, as a Virginia court would, by "turn[ing] first to the words themselves." *Wells Fargo Bank*, *supra*, 811 P.2d at 1033. *See Moore v. Gillis*, 239 Va. 239, 241, 389 S.E.2d 453 (1990). "Section 24, Fifth (hereafter Paragraph Fifth) refers to a national bank's 'other officers' who are appointed and discharged *'by its board of directors.'* (Italics added.) The statute does not purport to authorize a board's delegation of its authority to discharge officers at pleasure." *Wells Fargo Bank*, *supra*, 811 P.2d at 1033.

"In summary," the court said after explaining its reasoning in detail:

we decline to depart from the plain meaning of Paragraph Fifth, which restricts to the board of directors the power to discharge officers at pleasure. Considered against the background of general corporate and banking law, Paragraph Fifth is unambiguous in its reservation of authority to discharge officers serving at pleasure in the board. As Justice Mosk has explained: "We have declined to follow the plain meaning of a statute only when it would inevitably have frustrated the manifest purposes of the legislation as a whole or led to absurd results." [Citation omitted.] No frustration of purpose or absurdity in result obtains here.

*Id.* at 1035.

As a matter of long-established "general corporate law," the California Supreme Court explained, a corporate board has no power to delegate the performance of its basic powers and functions, particularly its statutory prerogatives, in the absence of express statutory authority. "To be sure, in the evolution of modern corporate law," the court noted, "boards of directors are authorized to and do in fact delegate many of their powers and functions to others . . . . But this change in the law has generally come about through enactment of specific statutory provisions that allow delegation . . . . No such provision appears in the National Bank Act." *Id.* at 1033.

In apparent recognition of the no-delegation rule, Wells Fargo contends that a provision of the National Bank Act supplies express authority allowing the board of directors to delegate its function of dismissing bank officers. It relies on section 24, Sixth (hereafter Paragraph Sixth), which grants a national bank the power, "To prescribe, by its board of directors, bylaws *not inconsistent with law*, regulating the manner in which its stock shall be transferred, its directors elected or appointed, *its officers appointed*, its property transferred, its general business conducted, and *the privileges granted to it by law exercised and enjoyed*." (Italics added.) Wells Fargo points to the provisions in Paragraph Sixth that *bylaws* can regulate the manner in which: (1) "officers can be appointed," and (2) "the privileges granted to it by law exercised and enjoyed." . . . .

Paragraph Sixth allows bylaws to regulate the manner in which "officers [are] *appointed*." (Italics added.) Conspicuously absent from Paragraph Sixth is any reference to the manner in which officers can be *dismissed*. This omission is in sharp contrast to Paragraph Fifth, which explicitly refers to both the appointment *and* dismissal of officers serving at pleasure, placing those functions in the hands of the board of directors. It is hornbook law that where Congress has carefully employed a term in one place and excluded it in another, it should not be implied where excluded. [Citations omitted.]

To accept Wells Fargo's argument, we would have to insert words into Paragraph Sixth so that it would extend to bylaws regarding "officers appointed [or dismissed]." Doing so would violate the cardinal rule that a statute "is to be interpreted by the language in which it is written, and courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions." [California citation omitted. *See County of Amherst v. Brockman*, 224 Va. 391, 397, 297 S.E.2d 805 (1982) ("We may not add to a statute language which the legislature has chosen not to include."); *Barr v. Town & Country Properties*, 240 Va. 292, 295, 396 S.E.2d 672 (1990).] . . . .

The language on which Wells Fargo relies strongly suggests that Congress either did not consider, or rejected, the view that a board can delegate its power to discharge officers at pleasure.

*Id.*, 811 P.2d at 1033-1034. Similarly, the California Supreme Court held, it availed the bank nothing to point to the provision in Paragraph Sixth that a national bank's bylaws, not inconsistent with law, may regulate "the privileges granted to [the bank] by law exercised and enjoyed."

The general language in this paragraph, the court explained, "is qualified by the more specific, restrictive language in Paragraph Fifth, that officers be dismissed *by the board of directors.* Within the text of the Act, the restriction is conspicuous. Congress did not include a requirement for board action in other provisions of section 24 that enumerate the powers of national banks," *e.g.*, to adopt and use a corporate seal, to have succession, to make contracts, to sue and be sued, to issue and sell securities. "To construe Paragraph Sixth as allowing a board of directors to delegate those powers creates no inconsistency between Paragraph Sixth and those provisions of section 24. Paragraph Fifth, however, unlike these other provisions, refers to powers *of the board of directors.* To construe Paragraph Sixth as allowing delegation of *all* the powers enumerated in section 24 would render meaningless the language in those provisions — like Paragraph Fifth — that are explicitly conferred *on the board* rather than *on the bank* as an entity." *Id.*

There was still another reason, the California Supreme Court noted, that the bank's reliance on Paragraph Sixth was "unpersuasive":

> Paragraph Sixth refers only to bylaws "regulating the *manner* in which a bank may exercise the powers enumerated in that paragraph. The power at issue in this case is the power to discharge officers serving at pleasure. Paragraph Fifth vests that power in the board of directors. Paragraph Sixth thus allows bylaws that regulate how that power is exercised *by the board.* We cannot reasonably extrapolate from Paragraph Sixth a further power to delegate the exercise of that power. A bylaw that regulates a *board's* exercise of its power is one thing. A bylaw that delegates the power to others is quite another thing—different in degree and in kind. We decline to read into Paragraph Sixth a sweeping power of a board of directors to delegate its power to discharge officers at pleasure absent clear and unmistakable language that Congress intended such result.
>
> This reading of Paragraph Sixth is also supported by its caveat that bylaws not be "inconsistent with law." A bylaw purporting to vest authority to discharge officers serving at the board's plea-

sure in some person or body other than the bank's board of directors is inconsistent with law, i.e., with the express provisions of Paragraph Fifth.

*Id.* at 1034-35.

First Union relies on several cases for the proposition that, contrary to the plain language of the statute, a board of directors may delegate its dismissal power, yet still be immune from suit under the National Bank Act. For example, in *Mahoney v. Crocker National Bank*, 571 F. Supp. 287 (N.D. Cal. 1983), a federal trial judge read into Paragraph Sixth and 12 C.F.R. § 7.4425 an implied right of a board of directors to delegate the power to dismiss officers, while retaining statutory immunity. Such "interpretation" of the unambiguous language of the Act is unnecessary and inappropriate. "Where the language in an ordinance or statute is plain and unambiguous, it must be given that plain meaning or intent. *Brown v. Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985)." *Board of Supervisors of Fauquier County v. Machinick*, 242 Va. 452, 456, 410 S.E.2d 607 (1991). "We must also assume that the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute." *Barr v. Town & Country Properties, supra*, 240 Va. at 295.

First Union also relies on cases such as *Mackey v. Pioneer National Bank*, 867 F.2d 520 (9th Cir. 1989), and *City National Bank of Baton Rouge v. Brown*, 599 So. 2d 787 (La. App. 1992), which are factually distinguishable from this case.

First Union also cites, and argues, a number of cases which are legally, as well as factually, distinguishable from the case at bar. These cases are not apposite to the power of discharge at will found in Section 24 (Fifth).

In *Mackey*, a bank's board of directors, pursuant to the bank's bylaws, created an executive committee from its own membership. "Certain functions were excluded from the mandate of the Executive Committee, but the termination of officers or employees was not one of these." *Id.* at 522. The executive committee voted unanimously to fire the bank's executive vice president and, shortly thereafter, the full board of directors ratified the executive committee's decision. *Id.*

The federal court of appeals had no trouble concluding, of course, that under these circumstances "there is no question that Mackey's firing was accomplished by the Board of Directors, acting through its Executive Committee [citation to record omitted], and not by the individual action of [the bank's] President." *Id.* at 525.

In *Brown*, the Louisiana appellate court found that the trial judge had correctly considered the minutes of a meeting of the bank's board of directors, *supra*, 599 So. 2d at 790. These minutes showed "that all members of the board were present, except one, and that all members present voted unanimously to terminate Brown's employment [as a senior vice president] with the bank." *Id.* at 789.

The facts of *Mackey* and *Brown* simply are not those of this case. As in every dispute, the facts of the case at bar determine the conclusions of law. In this case, Allen was discharged by the bank's president, not by its board. Since the National Bank Act provides immunity only when the board of directors discharges an officer, First Union's demurrer on that ground is overruled.